# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF MASSACHUSETTS
# EASTERN DIVISION

| | |
|---|---|
| In re<br><br>NATIONAL FISH AND SEAFOOD, INC.,<br><br>               Debtor | Chapter 7<br>Case No. 19-11824-FJB |

**MEMORANDUM OF DECISION ON
MOTION FOR RELIEF FROM STAY OF FORMER DIRECTORS AND OFFICERS OF THE DEBTOR
AUTHORIZING THE PAYMENT AND/OR ADVANCEMENT OF DEFENSE COSTS UNDER
THE DEBTOR'S DIRECTORS AND OFFICERS LIABILITY INSURANCE POLICY**

The matter before the Court is the Motion for Relief from Stay of Former Directors and Officers of the Debtor Authorizing the Payment and/or Advancement of Defense Costs Under the Debtor's Directors and Officers Liability Insurance Policy (the "Motion"). By the Motion, the defendants in a related adversary proceeding (the "D&O Litigation"), Todd Provost, Michael Bruno, and Jack Ventola (collectively, the "Movants"), each a former director and/or officer of National Fish and Seafood, Inc. (the "Debtor"), seek relief from the automatic stay, *nunc pro tunc*, authorizing the payment of defense costs under the Debtor's D&O Insurance Policy, as described below. John O. Desmond, the Chapter 7 trustee (the "Trustee"), in which capacity he is also the plaintiff in the D&O Litigation, opposes the Motion.

**FACTS**

The Trustee filed the complaint commencing the D&O Litigation against the Movants alleging, in general terms, breach of their duty of care to the Debtor and breach of their fiduciary duties to the Debtor for permitting the Debtor to engage in a series of transactions that removed $31 million in assets from the Debtor to related parties without benefit to the Debtor. Prior to the petition date, the Debtor purchased a Private Company Management Liability Insurance Policy from Hiscox Insurance Company,

Inc. ("Hiscox"), which includes a Director & Officers Liability Coverage Part (the "D&O Policy"). The D&O Policy provides up to $3,000,000 of primary insurance coverage, together with additional executive coverage with a limit of liability of $500,000 that covers the Movants. The executive limit is in addition to and not part of the $3,000,000 limit and is available solely for a loss resulting from any claim against any executive of the company covered under the D&O Policy. Each of the Movants are executives as that term is defined under the D&O Policy. The D&O Policy provides for the advancement of an insured's defense costs for legal fees and associated expenses incurred in defending a covered claim. As relevant to the Motion, the D&O Policy provides the following three coverages:

> **Coverage A: Individual Insurance Coverage** [hereinafter "A-side Coverage"]
> This D&O Coverage Part shall pay the Loss of an Individual Insured arising from a Claim . . . for any actual or alleged Wrongful Act of such Individual Insured, except when and to the extent that [the Debtor] has indemnified the Individual Insured for such Loss.
>
> **Coverage B: Company Reimbursement Coverage** [hereinafter "B-side Coverage"]
> This D&O Coverage Part shall pay the Loss of [the Debtor] arising from a Claim . . . for any actual or alleged Wrongful Act of such Individual Insured, but only when and to the extent that [the Debtor] has indemnified such Individual Insured for such Loss.
>
> **Coverage C: Company Coverage** [hereinafter "C-side Coverage"]
> This D&O Coverage Part shall pay the Loss of [the Debtor] arising from a Claim . . . for any actual or alleged Wrongful Act of [the Debtor].

To summarize, the D&O Policy provides three distinct types of coverage: A-side Coverage, which covers losses suffered by directors and officers, such as the Movants, for a loss arising from their wrongful acts, provided they have not already been indemnified for those losses by the Debtor; B-side Coverage, which covers the Debtor for amounts it has paid to reimburse directors and officers for covered losses; and C-side Coverage, which covers the Debtor itself for any loss on account of its own wrongful acts. In addition, the policy contains, at Section XI, entitled Order of Payments, the following provision:

> In the event of Loss arising from any Claim for which payment is due under the provisions of this D&O Coverage Part but which Loss, in the aggregate, exceeds the remaining available Limit of Liability applicable to this D&O Coverage Part, then the Insurer shall:

2

> A. first pay such Loss for which coverage is provided under Coverage A of this D&O Coverage Part, then with respect to whatever remaining Limit of Liability is available after payment of such Loss;
>
> B. then pay such Loss for which coverage is provided under Coverage B of this D&O Coverage Part, and
>
> C. then pay such Loss for which coverage is provided under Coverage C, D or E of this D&O Coverage Part.

It appears to be uncontested that all the claims currently stated in the D&O Litigation are for A-side Coverage. See Trustee Opposition, ¶ 9 (the D&O Litigation states claims against the "Defendants," who are the Movants). The Debtor is not a defendant in the D&O Litigation, so that litigation gives rise to no C-side Coverage, and there has been no claim asserted by the movants against the Debtor for indemnification, so the litigation has given rise to no B-side Coverage.

There are currently no other claims that have been asserted under the D&O Policy. The Trustee is unaware of any claim, either already filed or that might yet be filed or asserted, against the Debtor (or as a prepetition claim in this bankruptcy case) for which the Debtor (or now the estate as owner of the debtor's rights under the Policy) would be entitled to C-side coverage. Nor has a claim been asserted against the Debtor or the estate for indemnification for which the Debtor (or now the estate as owner of the debtor's rights under the Policy) might be entitled to B-side coverage.  It is possible that the Movants themselves would have indemnification claims against the Debtor arising from the D&O Litigation, but it is unlikely that any such claims will be asserted because the Movant's have direct Side-A coverage under the policy for the losses for which they would otherwise be seeking indemnification from the Debtor.  It is possible that their claims for indemnification would, in the end, exceed the policy coverage limits, and the Movants might then have cause to seek indemnification for the balance of their loss from the estate, but any such claim would give rise to no B-side coverage because the policy's coverage limits would in that scenario already have been exhausted.

3

The deadline for filing proofs of claim in this bankruptcy case has passed, and no claim has yet been asserted that might give rise to B- or C-side coverage. The Movants contend that the Trustee's asserted rights to B- and C-side coverage under the policy are therefore merely hypothetical, not real, because the passing of the claims deadline makes further claims impossible. For two reasons, I cannot so find. First, there are exceptions to the claims deadline. See Fed. R. Bankr. P. 3002(c), especially subsection (c)(3). Second, in a chapter 7 case, even tardily filed claims may be allowed and paid, only at a lower level of priority. See 11 U.S.C. § 726(a)(3). It therefore is not possible to wholly rule out competing B- and C-side claims at this juncture; and it is not clear when that might be possible. Still, for what it may be worth, I find, as the Movant's urge, that the likelihood of the Debtor (or the estate's) acquiring a B- or C-side loss for which it might be entitled to coverage at this juncture is very small.

The Movants have demanded payment of their defense costs under A-side Coverage. Hiscox has agreed, under a reservation of rights, to cover such costs, provided this court enters an order "authorizing" such advances so that there is no concern that such advances are in violation of the automatic stay under 11 U.S.C. § 362(a). In essence, the motion seeks relief from the automatic stay for Hiscox to make the requested advances.

In fact, Hiscox has already advanced approximately $100,000 in defense costs to the Movants, and therefore the Movants also ask that the relief they now seek be effective *nunc pro tunc* to the dates of the advances already made.

**DISCUSSION**

The so-called automatic stay, set forth in 11 U.S.C. § 362(a)(1) through (8), stays eight major groups of actions against the debtor and the estate. Relevant here are the stays in § 362(a)(3) of "any act to obtain possession of property of the estate [. . .] or to exercise control over property of the estate." In order for these stays to apply, of course, the asset in question must be property of the estate. See 11 U.S.C. § 541(a)(a) (defining property of the estate as including, subject to exceptions not relevant

here, "all legal or equitable interests of the debtor in property as of the commencement of the case"). While in this case it is uncontested that the D&O Policy itself is an asset of this bankruptcy estate, the parties hotly dispute whether the proceeds of the D&O Policy are assets of the estate. The Trustee maintains that the proceeds are property of the estate, and consequently that the proposed distributions would violate the injunctions in subsection (a)(3) as to acts to obtain possession of and exercise control over property of the estate.

Courts have consistently held that D&O policies are property of the estate. *Houston v. Edgeworth (In re Edgeworth)*, 993 F.3d 51, 55 (5th Cir. 1993). Courts, however, are divided on whether the proceeds of D&O insurance policies are assets of the estate. *In re Adelphia Communications Corp.*, 298 B.R. 49, 53 (Bankr. S.D.N.Y. 2003). Recognizing that the determination of whether such insurance proceeds are an asset of the estate is case specific, courts have considered several factors in making their decisions, but all start with the language of the policy. In addition, courts look at whether the claims asserted in the relevant litigation are asserted solely against the directors and officers or, in addition, include, or could include, claims against the debtor. Where the policy covers claims against the directors and officers (A-side Coverage) as well as claims against the corporation (B- or C-side Coverage), courts have almost uniformly found the proceeds to be assets of the estate. *In re Adelphia Communications Corp.*, 298 B.R. at 57; *In re Pasquinelli Homebuilding, LLC,* 463 B.R. 468 (Bankr. N.D. Ill. 2012); *In re Cybermedica, Inc.*, 280 B.R. 12 (Bankr. D. Mass. 2002). These cases focus on the proposition that the bankruptcy estate is worth more with the D&O policy that includes entity coverage than without it. In *Louisiana World Exposition v. Federal Ins. Co. (In re Louisiana World Exposition)*, 832 F.2d 1391 (5th Cir. 1987), the Fifth Circuit found that the proceeds of a D&O policy were not an asset of the estate because the policy at issue included no entity or C-side Coverage. The court ruled that for policies that provide C-side Coverage to the corporation/debtor itself, "the estate owns not only the policies, but also the proceeds designated to cover corporate losses or liability." *Id*. at 1400.

5

The D&O Policy in this case covers the debtor corporation for both B-side and C-side Coverage. On the facts of this case, though it is highly unlikely, claims may yet be asserted in this case for which the Debtor, and therefore the estate, would be entitled under the policy to coverage. Without question, the Debtor's rights under the policy to B- and C-side coverage are assets of the estate. Also, because the total coverage under the policy is limited, any distribution to one of the Movants, at least of the initial $3,000,000 in coverage, would reduce the coverage available to the Debtor, and hence to the estate. On these facts, I conclude that movant's receipt of proceeds on their A-side claims under the policy would exercise control over rights under the policy that belong to the estate. The distribution is therefore subject to the stays in subsection (a)(3) of acts to exercise control over property of the estate.

It follows that the proposed distributions to the Movants may be made only with relief from these stays. Subsection 362(d)(1) states that on request of a party in interest, the court shall grant relief from the stay "for cause." The Movants do not expressly invoke this subsection, but it is clear that they are proceeding under it. As their cause for granting relief from the stay, the Movants state the following:

- that they are entitled under the D&O Policy to coverage of their defense costs;

- that they relied on that coverage in serving as officers and directors of the Debtor;

- that they have a real need for the coverage right now and would suffer irreparable harm—inability to retain counsel to defend themselves in the pending litigation—if they were denied access to the proceeds of the D&O Policy to cover their defense costs;

- that the B- and C-side coverage that the Trustee seeks to protect here is at best highly speculative and remote in possibility, as no claim to which such coverage would apply has to date been asserted (notwithstanding that the bar date for filing claims in this bankruptcy case has passed) or even appeared in prospect;

- and that the Trustee's real concern here is to preserve A-side Coverage to fund the Trustee's anticipated judgment in the D&O Litigation; and this is not an appropriate

6

basis for the Trustee's opposition because the A-side Coverage belongs entirely to the covered officers and directors and is not subject under the policy to any right of control by the Debtor, or in this bankruptcy case by the Trustee exercising the Debtor's rights, much less by the judgment creditor on the covered claim.

"Cause" in subsection (d)(1) is not a defined term. "Section 362(d)(1) authorizes the bankruptcy court broad discretion to grant relief from the automatic stay imposed under section 362(a) for 'cause.'" *In re Mila, Inc.*, 423 B.R. 537, 542 (B.A.P. 9th Cir. 2010). Here the Court's principal concern is in safeguarding property of the estate. The Trustee would have the Court protect two distinct sets of rights constituting estate property.

His first concern is in protecting the Debtor's right to coverage under the policy for potential B- and C-side claims. I have ruled that the Debtor's rights under the D&O Policy to such coverage are property of the estate. The Trustee would have the Court continue the stay in place for a time to determine whether any such claims arise, so that the estate can properly share in the D&O Policy's limited coverage with respect to those B- and C-side claims. In this strategy, the Trustee assumes that if the Movants' rights to A-side coverage, in combination with the Trustee's rights to B- or C-side coverage, cause total claims for coverage to exceed the policy's limits, then somehow the Trustee would be entitled to a share of the distribution. I find no support for that proposition in the D&O Policy. The property of the estate that requires protection here is limited to the Debtor's rights under the policy, such as they are. In the policy, they coexist with and are limited by the right of officers and directors to A-side coverage. Those A-side coverage rights include the rights in Section XI of the D&O Policy, dealing with Order of Payments. It specifies that when covered claims exceed the limit of coverage, A-side claims are to be paid first. Therefore, at the end of the day (whenever that may be), the Movants' A-side Coverage would always take precedence over any right to B- or C-side Coverage that the Trustee had by then accrued. In other words, continuation of the stay would not protect estate rights to coverage, only

delay the distribution of A-side Coverage that would in any event have priority over the estate's rights to coverage. As the Movants' have need of their A-side coverage now and in any event enjoy contractual priority over B- and C- side coverage, regardless of timing, the Trustee's concern for protection of potential B- and C-side Coverage is not a basis for denying the relief the Movants seek.

The Trustee's second concern, and the real reason for his opposition, is with protecting the availability of the Movants' A-side coverage to pay the judgment he seeks in the D&O Litigation by preventing the consumption of that Coverage by defense costs. In this regard, however, the Trustee is not seeking protection of property of the estate. He has cited no provision in the D&O Policy, and I have found none, on the basis of which he, either as holder of the Debtor's rights under the policy or as a (potential) judgment creditor on the claims for which the Movants' are seeking A-side coverage, would have any right to control the apportionment of A-side Coverage as between defense costs and payment of the judgment. This particular stick is not part of the bundle of rights that constitute the estate's property here. Accordingly, it too is not a basis on which the Court may or should deny the relief sought.

For these reasons, I find that the Movant's have established cause to permit distribution of their A-side Coverage for attorney's fees in the D&O Litigation.

The Movants also ask that I make that grant of relief from the stay retroactive to the (unspecified) date on which Hiscox has apparently already made a distribution. They have cited no basis for this demand of *nunc pro tunc* relief. A grant of relief from the stay after the fact requires justification, even where unopposed. "[A]lthough courts possess a limited discretion to grant retroactive relief from the automatic stay, instances in which the exercise of that discretion is justified are likely to be few and far between." *In re Soares*, 107 F.3d 969, 977 (1st Cir. 1997). "[I]f congressional intent is to be honored and the integrity of the automatic stay preserved, retroactive relief should be the long-odds exception, not the general rule. In our view, only a strict standard will ensure the accomplishment of these

objectives." *Id*.  No justification having been offered, retroactivity is denied. The grant of relief will apply to the earlier distributions, but only from the date of its entry.

      A separate order will enter allowing the relief sought, but effective only from the date of its entry.

Date:  February 26, 2021

                                                              */s/ Frank J. Bailey*
                                          Frank J. Bailey
                                          United States Bankruptcy Judge